## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE GEORGE TOWN CLUB AT SUTER'S TAVERN,** A Non-Profit Organization, having its principal place of business at 1530 Wisconsin Avenue, Washington, D.C., <br><br> Petitioner, <br><br> v. <br><br> **GILBERTO SALAMANCA,** An individual, residing at 14624 Carona Drive, Silver Spring, Maryland 20905, <br><br> Respondent. | **Case No.:** |

## PETITION TO COMPEL ARBITRATION

Petitioner, The George Town Club at Suter's Tavern, Inc. (the "George Town Club") by and through its undersigned counsel, alleges the following:

1.      This is a Petition to Compel Arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (West 2006).

2.      Petitioner seeks an order compelling Respondent, Gilberto Salamanca ("Respondent" or "Salamanca"), to comply with his written commitment to arbitrate all disputes arising out of his employment relationship with the George Town Club in the District of Columbia.

## PARTIES

3.      The George Town Club is a non-profit private dining club in the District of Columbia and organized under the laws of the District of Columbia governing non-profit organizations.

4.      Respondent is an individual who resides in the state of Maryland and is a former employee of the George Town Club from 1997 until September 2006.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the present action under 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between the parties.  Petitioner is a citizen of the District of Columbia.  Respondent is a citizen of the state of Maryland.  Based on Respondent's claims, the amount in controversy exceeds $75,000.  Specifically, Respondent has alleged claims against Petitioner totaling in excess of $600,000 in compensatory damages, plus unspecified punitive damages.

6.      This Court has personal jurisdiction over Respondent on the grounds that, pursuant to the arbitration agreement, Respondent agreed to arbitrate his disputes with Petitioner in the District of Columbia.

7.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391 (a) in that a substantial part of the events giving rise to the Respondent's claims occurred in the District of Columbia and Respondent is subject to personal jurisdiction in the District of Columbia.

25192261\V-1

## FACTS

8.     In 1997, Respondent commenced employment with the George Town Club as a

part-time parking valet, and thereafter, he was promoted to a full-time waiter position.  At the

time of his commencement of employment, Respondent was issued an employee manual.  The

manual contained a provision entitled "Binding Arbitration" that provided, *inter alia*, that:

> Any controversy arising from this Manual or arising from or
> related to employment with the Club shall be resolved by
> arbitration in Washington, D.C.  The agreement to arbitrate
> includes controversies based upon federal and DC equal
> employment opportunity laws, as well as other kinds of disputes.
> The Club will pay for the arbitrator or arbitrators, but will not pay
> the legal fees of employees. . . . .
>
> The arbitration shall be resolved by an arbitrator agreed upon by
> the parties, or by a board of three arbitrators appointed in the
> following manner.  Each party shall appoint one arbitrator and
> those two shall select a third neutral arbitrator.  The responding
> party shall advise the initiating party of the name of its arbitrator
> within 10 days of receipt of the Demand.  If the party-appointed
> arbitrators cannot agree on a neutral third arbitrator, or if for any
> other reason, the appointment of the third arbitrator cannot be
> made within thirty days of the date of the Demand, *the third
> arbitrator may be selected by the United States District Court for
> the District of Columbia under the authority of the Federal
> Arbitration Act.*

*George Town Club Employee Manual, Binding Arbitration Section (emphasis added), attached
hereto as Exhibit A.*

9.     On November 17, 2006, Respondent filed a Complaint and Jury Demand in the

Superior Court for the District of Columbia against the George Town Club, alleging that his

employment with the George Town Club had been wrongfully terminated, and asserting claims

for race discrimination, retaliation, wrongful discharge in violation of public policy, and

violations of 29 U.S.C. § 1162(3) (COBRA) (the "Complaint").  All of the claims in his

Complaint are "controversies arising from or related to employment with the Club." *Complaint, attached hereto as Exhibit B.*

10.     In the Complaint, Respondent admitted to receiving a copy of the George Town Club employee manual in 1997 when he commenced his employment with the Club. *Exhibit B at ¶¶ 7, 10.*

11.     Respondent accepted all of the benefits of the employment relationship offered by the George Town Club, including compensation, merit increases and various other benefits, such as paid vacation and paid health insurance benefits. Respondent admits that he was familiar with the provisions of the Employee Manual from the start of his employment with the Club. Included within these provisions is a condition of employment that all disputes arising out of the employment relationship be submitted to binding arbitration. Respondent thus understood and agreed that any disputes that he had relating to his employment with the Club would have to be submitted to binding arbitration. The arbitration agreement contains no expiration date.

12.     All of the claims asserted in the Complaint are arbitrable under the parties' arbitration agreement.

13.     In filing the Complaint, Respondent has failed, neglected or refused to arbitrate under a written agreement for arbitration.

14.     On December 8, 2006, Counsel for the George Town Club demanded that Respondent agree to arbitrate his claims asserted in the Complaint by sending a certified letter (pursuant to the requirements of the parties' arbitration agreement) to counsel for Respondent. *Petitioner's Demand for Arbitration, attached hereto at Exhibit C.*

- 4 -

15.    Respondent has continued to refuse to withdraw his Complaint and to abide by his agreement to arbitrate his claims arising out of his employment relationship with the George Town Club.

## COUNT I

REQUEST FOR AN ORDER COMPELLING THE PARTIES TO ARBITRATE RESPONDENT'S CLAIMS IN ACCORDANCE WITH THE ARBITRATION AGREEMENT PURSUANT TO 9 U.S.C § 4

16.    Petitioner realleges and incorporates by reference each allegation set forth in paragraphs 1 through 15 of this Petition as though set forth herein.

17.    Petitioner has complied with all of its contractual obligations regarding arbitration of any disputes between the parties arising from or related to employment with the Club.

18.    There is a written agreement to arbitrate Respondent's claims that covers any disputes between the parties arising from or related to employment with the Club, and specifically "including disputes about equal opportunity rights." *Exhibit A.*

19.    The agreement provides the manner in which the arbitrators will be selected, and provides that the arbitrators shall determine the procedures for the administration of the arbitration.  It also provides that the Petitioner will pay for the arbitrator or arbitrators.

20.    Petitioner has properly initiated the arbitration process pursuant to the parties' agreement, its request for arbitration encompasses all of Respondent's claims in the Complaint, and Respondent has received adequate notice of the arbitration proceedings.

21.    Respondent has wrongfully refused to participate in the arbitration proceedings in violation of his arbitration agreement.

- 5 -

22.     Pursuant to the strong federal policy favoring arbitration and enforcing arbitration agreements, the Court should direct the parties to arbitrate in accordance with the arbitration agreement.

23.     Accordingly, Petitioner asks the Court to direct the parties to arbitrate the disputes set forth in the Complaint in accordance with 9 U.S.C. § 4.

WHEREFORE, Petitioner prays that this Court:

a)     Enter an order pursuant to 9 U.S.C. §4 directing the parties to arbitrate in accordance with the parties' arbitration agreement; and

b)     Grant such other and further relief under the circumstances as the Court may deem just and proper.

December 22, 2006                     Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By:_____
     Amy L. Bess (D.C. Bar No. 418985)
     abess@sonnenschein.com
     1301 K Street, N.W.
     Suite 600, East Tower
     Washington, D. C. 20005
     (202) 408-6400
     (202) 408-6399 (facsimile)

*Attorney for The George Town Club at Suter's Tavern*

# Exhibit A

# The Historic George Town Club

## September 1997

**This manual replaces and supersedes all previous manuals.**

4. It is <u>never</u> appropriate to take a problem, grievance or complaint to a Member, including a Director. The General Manager has the responsibility for all staff functions within the Club and must be included in all negotiations and resolution.

Remember -- it is always best to resolve problems right away. Little problems tend to turn into big problems; facts become confused; resentment and anger builds up. It is always best to get things off your chest before they get out of hand.

**Binding Arbitration:** In the unlikely event that a problem or grievance cannot be solved internally, the Club is of the view that the public airing of disputes about employment relationships usually does not add to the reputation of the employer or the employee involved. Accordingly, the Club has a policy requiring the binding arbitration of all employment related disputes, including disputes about equal opportunity rights.

Any controversy arising from this Manual or arising from or related to employment with the Club shall be resolved by arbitration in Washington, DC. The agreement to arbitrate includes controversies based upon federal and DC equal employment opportunity laws, as well as other kinds of disputes. The Club will pay for the arbitrator or arbitrators, but will not pay the legal fees of employees.

Either the employee or the Club may initiate the arbitration process by registered or certified mail to the other party's business address or residence, giving written notice of intention to arbitrate (a Demand), stating the both the dispute and the relief sought, and naming the arbitrator appointed by the initiating party.

The arbitration shall be resolved by an arbitrator agreed upon by the parties, or by a board of three arbitrators appointed in the following manner. Each party shall appoint one arbitrator and those two shall select a third neutral arbitrator. The responding party shall advise the initiating party of the name of its arbitrator within 10 days of receipt of the Demand. If the party-appointed arbitrators cannot agree on a neutral third arbitrator, or if for any other reason the appointment of the third arbitrator cannot be made within thirty days of the date of the Demand, the third arbitrator may be selected by the United States District Court for the District of Columbia under the authority of the Federal Arbitration Act.

The board of arbitrators shall determined the procedures for the administration of the arbitration.

Exhibit B

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001  Telephone:  879-1133

Gilberto Salamanca
14624 Carona Drive, Silver Spring, MD 20905

*Plaintiff*

VS.

The George Town Club at Suter's Tavern, Inc.
1530 Wisconsin Ave., N.W., Washington, DC 20007

*Defendant*

0008375-06

Civil Action No. [                    ]

## SUMMONS

To  the  above  named  Defendant:

　　　　You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**.   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

　　　　You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue.  N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff  If you fail to file an Answer, judgment  by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Christopher "Kip" Schwartz

Name of Plaintiff's Attorney

Thompson Hine LLP

Address

1920 N Street, N.W., Washington, DC 20036

202.263.4157

Telephone

By [signature]
Deputy Clerk

Date  11/17/06

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(1)-456/Mar. 91

NOTE:  SEE  IMPORTANT  INFORMATION  ON  BACK  OF  THIS  FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

|  |  |  |
|---|---|---|
| GILBERTO SALAMANCA,<br>14624 Carona Drive<br>Silver Spring, MD 20905 | )<br>)<br>)<br>) | Civil Action No. |
| Plaintiff, | )<br>)<br>) | 0008375-06 |
| v. | )<br>) |  |
| THE GEORGE TOWN CLUB AT SUTER'S<br>TAVERN, INC.<br>1530 Wisconsin Ave. NW<br>Washington, DC 20007 | )<br>)<br>)<br>)<br>) |  |
| Defendant. | )<br>) |  |

RECEIVED
Civil Clerk's Office
NOV 17 2006
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT AND JURY DEMAND

Plaintiff, Gilberto Salamanca, by and through his undersigned counsel, for his Complaint against the Defendant, The George Town Club at Suter's Tavern, Inc., alleges and avers as follows:

## NATURE OF THE ACTION

1.    This is an action brought under the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401.01, et seq., to remedy Defendant's discrimination, harassment, and retaliation of Plaintiff in his employment. Plaintiff also asserts claims for wrongful discharge and for violations of the continuation coverage requirements mandated by 29 U.S.C. § 1162. ("COBRA").

## PARTIES

2.      Plaintiff, Gilberto Salamanca, is an individual resident of Maryland and a former

employee of the Defendant who was fired without warning or cause on September 14, 2006.

3.      Defendant, The George Town Club at Suter's Tavern, Inc. ("Club"), is a private

dinner club located in the District of Columbia and organized as a non-profit corporation under

the laws of the District of Columbia.  Defendant is an employer as defined by D.C. Code § 2-

1401.02 (10).

## JURISDICTION

4.      The Court has subject matter jurisdiction over this case pursuant to District of

Columbia Code § 11-921 and 29 U.S.C. § 1132.

5.      The Court has personal jurisdiction over the Defendant in this case because the

Defendant is organized under the laws of the District of Columbia and maintains its principal

place of business in the District of Columbia.

## FACTS

6.      Mr. Salamanca is an immigrant from El Salvador and a United States citizen.

7.      In 1997, the Club hired Plaintiff to work as a part-time parking valet.

8.      In 1998, the Club promoted Plaintiff to a full-time position as a waiter, the

position he held until his termination in 2006.

9.      Plaintiff's base starting salary as a waiter was $4.90 per hour in 1998 and had

risen to $5.50 per hour by 2006.

10.     At the time of his hire, Plaintiff was given an employee manual.

11.     The Club's management distributed a revised employee manual ("Manual" or

"Employee Manual") to all of the Club's employees, including Plaintiff, in July 2000.

- 2 -

12.     Pages 16 through18 of the Employee Manual include a section entitled

"Unacceptable Activities" which states, in part, as follows:

> Occurrences of any of the following activities, as well as violations
> of any Club rules or policies, may be subject to disciplinary action,
> including possible immediate dismissal. This list is not all
> inclusive.
>
> - Any act of harassment, sexual, racial, or other; telling sexist
>   or racial-type jokes; making racial or ethnic slurs.

. . . .

13.     Pages 18-20 of the Employee Manual include a section entitled "Disciplinary

Actions" which provides a three-step disciplinary process that "managers are expected to

follow":

> ***Step One: Oral Reminder***  Your manager will meet with you to discuss
> the problem, making sure that you understand the nature of the violation
> and the expected remedy. The purpose of this conversation is to remind
> you of exactly what the rule or performance expectation is and also remind
> you that it is your responsibility to meet that expectation.
>
> You will be informed that the Oral Reminder is the first step of the
> discipline procedure. Your manager will document the Oral Reminder,
> which will remain in effect for 3 months.
>
> ***Step Two: Written Reminder***  If your performance does not improve
> within the 3 month period, or if you are again in violation of Club
> practices, rules, or standards of conduct, your manager will discuss the
> problem with you, emphasizing the seriousness of the problem and the
> need for you to immediately remedy the problem. Following the
> conversation, your manager will write a memo to you summarizing the
> discussion. The original memo will go to you and a copy will be routed to
> the general manager. That copy will be placed in your file. The Written
> Reminder will remain in effect for 6 months.
>
> *        *        *
>
> ***Step Three: Decision-Making Leave***  If your performance does not
> improve within the 6 month period following a Written Reminder, or if
> you are again in violation of Club practices, rules, or standards of conduct,
> you will be placed on Decision Making Leave. The Decision Making

- 3 -

Leave is the final step of the disciplinary system. Decision Making Leave is a paid, one-day disciplinary suspension. Employees on Decision Making Leave will spend the following day away from work deciding whether to correct the immediate problem and conform to all of the company's practices, rules and standards of conduct, or to quit and terminate their employment.

You will be allowed to return to work with the understanding that if a positive change in behavior does not occur, or if another disciplinary problem occurs within the next 12 months, you will be terminated. If you are unwilling to make such a commitment, you may be terminated.

*        *        *

If you commit any of the actions below, or any other action not specified but similarly serious, you will be suspended without pay pending the investigation of the situation. Following the investigation, you may be terminated without any previous disciplinary action having been taken.

1. Theft
2. Falsification of records
3. Failure to follow safety practices
4. Conflict of interest
5. Threat of, or the act of doing bodily harm
6. Willful or negligent destruction of property
7. Use and/or possession of intoxicants, drugs or narcotics
8. Neglect of duty
9. Refusal to perform assigned work or to follow a direct order

14.    The Employee Manual also sets forth an Anti-Harassment Policy which states, among other things, that when an employee becomes aware of harassment, that employee "must" report it to their immediate manager or "any management representative with whom they feel comfortable." The policy further provides that management is "obligated to take prompt and appropriate action." The policy also specifies that "no adverse employment action will be taken against any employee making a good faith report of alleged harassment."

15.    Upon information and belief, Laurent Lala ("Lala") was hired by Melanie Blesse ("Blesse"), the Club's General Manager, as Maitre d' and Sommelier in May 2005.

- 4 -

16.    At all times relevant to this Complaint, Lala was Plaintiff's direct supervisor.

17.    Prior to Lala's hiring, Plaintiff had never been reprimanded by the Club's management for his job performance.

18.    From the time he was hired, Lala frequently made disparaging remarks about the Club's Latino employees, to other, non-Latino employees.

19.    Lala stated, among other things, that he did not like having members of the "Latino Mafia" working for him and that he wanted to fire some of the Latino employees.

20.    Lala specifically stated to other management personnel that he wanted to fire the Plaintiff.

21.    Lala stated that the Club's Latino workers were all "lazy" and that they were "ignorant," despite the fact that some of the Club's Latino employees had up to 28 years experience working for the Club.

22.    Lala claimed that the Club's Latino employees were "a bunch of drunkards" that did not "know how to work."

23.    Lala has stated that he preferred to have employees working for him who were "tall and slender" and not "short and fat" like many of the Club's Latino employees.

24.    When a tall, slender, light-skinned waiter was offered a management position at a competing business, Lala offered him a raise so that he would stay, but did not offer to raise the salaries of shorter, heavier, darker-skinned Latino waiters with comparable experience, such as Plaintiff.

25.    When Lala was hired, Blesse told Plaintiff and the other waiters that Lala's assigned tasks would include helping them attend to guests during times when the Club was

- 5 -

busy. In fact for that support, Lala receives fourteen percent (14%) of all the tips earned by the waiters.

26.    The guest service areas in the Club are located on both the first and second floors.

27.    In late 2005, Plaintiff was attending to one set of guests on the second floor of the Club when Lala berated him for not serving coffee to another set of guests on the first floor of the Club.

28.    When Plaintiff asked Lala why he could not help, as Plaintiff was occupied at that moment, and Lala was not busy, Lala berated Plaintiff and immediately suspended him for three days without pay.

29.    Lala did not follow any of the disciplinary procedures outlined in the Employee Manual with regard to Plaintiff's suspension.

30.    Beginning in the fall of 2005, Lala began sending many of the Latino employees, including Plaintiff, home before their scheduled shifts were completed, often retaining non-Latino employees who were close friends of his in their place.

31.    In November 2005, at a monthly staff meeting of all of the Club's employees, Blesse stated that Club employees would be prohibited from speaking in Spanish on the Club's premises, even if they were only in the kitchen and regardless of whether Members were present.

32.    Blesse's policy meant that the Latino employees were even prohibited from speaking in Spanish to members or guests of the Club who were from Latin American countries, even if such members or guests addressed the employee in Spanish first.

33.    French, Lala's native language, was not, however, prohibited on the Club's premises and was frequently spoken by Lala and Blesse.

- 6 -

34. In or about December 2005, Samuel Romero, the Club's bartender and another Latino employee, told Lizette Corro, a Latina member of the Club's Board of Directors, about Blesse's prohibition on speaking Spanish in the Club.

35. After Blesse learned that Ms. Corro had complained to the Club's President about the prohibition, Blesse approached Plaintiff and asked him whether he had spoken to Ms. Corro.

36. Plaintiff told Blesse that he had not spoken to Ms. Corro but that he fully supported Mr. Romero's actions in so doing.

37. Throughout the spring of 2006, many of the Latino employees, including Plaintiff, began to complain to Blesse about their decreased wages, reduced hours and Lala's racially abusive treatment.

38. On June 8, 2006, Blesse suspended Salvador ("Ricky") Sanchez, the Club's banquet manager, for one month without pay for supposed "offenses" Mr. Sanchez had committed at a private party at the Club on June 3, 2006.

39. To justify Mr. Sanchez's suspension, Blesse falsely charged, in a letter to Mr. Sanchez, that Mr. Sanchez had removed partially full drinks, thus creating an artificially padded bill, had served clearly drunk people multiple drinks at one time, and that his paperwork and accounting work for the event were incorrect and submitted late.

40. Blesse's letter did not allege that Mr. Sanchez had served alcohol to underage guests.

41. Nevertheless, Blesse later sought to justify Mr. Sanchez's suspension to members of the Club by claiming that Mr. Sanchez had served alcohol to underage guests.

42. At the time of the June 3, 2006, event, Lala was Mr. Sanchez's supervisor.

- 7 -

43. During the June 3, 2006, event, Lala was in charge of verifying and, upon information and belief, did in fact verify the age of all of the guests.

44. There were no clearly drunk individuals served at the June 3, 2006, party.

45. Upon information and belief, no minor guests were served alcohol at the June 3, 2006, party.

46. In July 2006, Plaintiff complained to Blesse about the suspensions of the other Latino employees, which he considered to be unfair and attributable to Lala's discriminating intent, overbearing micromanagement and refusal to take responsibility for his own mistakes.

47. Throughout the spring and summer of 2006, Lala frequently sent Plaintiff home hours before the end of his shift while non-Latino waiters worked their full shifts.

48. Throughout the spring and summer of 2006, Lala often told Plaintiff not to report for work on days when he was otherwise scheduled. Lala then gave Plaintiff's hours to non-Latino employees and outside waiters with little experience who were Lala's personal friends.

49. Because of Lala's directions to leave or not come in to work, Plaintiff, who was ostensibly a full-time employee, had his hours reduced to just 15 to 20 hours per week during the months of June and July, 2006.

50. When another Latino employee offered his shift to the Plaintiff on a day when Plaintiff was not scheduled to work because the other employee wanted to take the day off, Lala stated that if Plaintiff worked the shift, Plaintiff would have forego working a scheduled shift on another day, even though Plaintiff would not have exceeded 40 hours for the week if he had worked the shift and even though Plaintiff's working the shift would not have affected the Club's total number of scheduled employee hours for the week.

- 8 -

51.     Throughout the summer of 2006, Lala repeatedly berated Plaintiff for actions over which Plaintiff had no control, such as taking too long to serve guests even though their food had not yet been prepared by the kitchen.

52.     Plaintiff reported to Blesse actions by Lala that Plaintiff, based on his long experience with the Club, considered to be detrimental to the Club's focus on guest service.

53.     One such case involved a large private party where a guest left a jacket behind and came back to retrieve it after the Club had closed its doors.  Instead of allowing the guest back in to retrieve her coat, Lala told her to "go away," picked up the phone, and started to call the police to claim that the guest was a trespasser.

54.     When Blesse refused to address the Plaintiff's complaints and those of the Club's other Latino employees, Plaintiff repeatedly asked to be allowed to speak with the Club's President.

55.     Blesse always refused Plaintiff's requests and prohibited him from talking to the Club's President.

56.     Blesse repeatedly asked Plaintiff whether he had complained to the Club's members when she was not present.

57.     During the Summer of 2006, the Club began delaying Court ordered child support payments on Plaintiff's behalf, despite having already garnished such payments from his weekly pay.

58.     In August 2006, despite repeated complaints about his discriminatory treatment of the Club's Latino employees and preferential treatment of less experienced non-Latino employees, Blesse promoted Lala to the position of Food and Beverage Manager.

59.    On September 14, 2006, Plaintiff was serving guests under the supervision of a new French Maitre d' that Lala had hired.

60.    On that same day, Plaintiff had planned, during his scheduled afternoon break, to visit his father who was at home on his death bed, suffering from cancer.

61.    With, upon information and belief, Blesse's permission, the Maitre d' announced that he would be leaving early that afternoon and that Plaintiff would have to stay throughout the afternoon to continue to serve customers, notwithstanding that Plaintiff's scheduled shift included the afternoon break and that only one customer was present in the entire Club.

62.    Blesse was not present at the time and, despite his protests to the Maitre d' and other managers that he had matters to attend to that afternoon, Plaintiff stayed at work, never leaving the Club, until the Maitre d', who had disappeared, reappeared approximately 30 minutes later and told Plaintiff to go home.  Then and only then did Plaintiff leave the Club to attend to his father.

63.    When Plaintiff returned to work the dinner shift, Blesse, who had since returned to the Club, immediately called Plaintiff into her office and summarily terminated him.

64.    At no time did Blesse, Lala, or any other management employee give Plaintiff a written explanation, as required by the Employee Manual discipline procedures, of why disciplinary action was being taken against him, as prescribed by the Employee Manual discipline procedures.

65.    At no time did Blesse investigate or remediate the staff's complaints about Lala.

66.    No member of the Club has ever complained about Plaintiff's service or abilities.

67.    As a result of his mistreatment and summary termination at the hands of Lala and Blesse, Plaintiff has suffered insomnia, anxiety, emotional distress, humiliation, and depression.

68.    During the time he was employed, Plaintiff had approximately $156 per month withheld from his paycheck to cover his health insurance premiums.

69.    The Club's management represented to Plaintiff that the Club paid 50 percent of the cost of employee health insurance premiums provided as a benefit to full-time employees.

70.    After his termination on September 14, 2006, Plaintiff received a letter from the Club's controller requiring that he pay by October 1, 2006, approximately $682 for COBRA health insurance continuation coverage for the month of October.

71.    Plaintiff later received another letter from the Club's controller demanding that he pay approximately $ 2,800 per month for COBRA health insurance coverage to continue his health care benefits for the month of October.

72.    Because of the elevated prices that the Club has demanded Plaintiff pay, Plaintiff has been without health insurance coverage since his termination.

73.    At no time did Blesse, Lala, or any other members of the Club's management follow the three-step disciplinary procedure outlined in the Employee Manual with respect to Plaintiff, as both his suspension in September 2005 and his termination on September 14, 2006, were summary in nature.

## COUNT ONE
### (Race Discrimination)

74.    Plaintiff incorporates by reference the averments of Paragraphs 1-73, above, as if fully set forth herein.

75.    Plaintiff, a Latino immigrant from El Salvador, is a member of a protected class.

- 11 -

76.    Plaintiff is qualified for the job of waiter, from which he was summarily terminated, as illustrated by his eight years of experience and exemplary performance in that position.

77.    Prior to Plaintiff's termination, Lala's conduct and racial slurs had created a hostile work environment for the Club's employees, including Plaintiff.

78.    Plaintiff was subjected to a number of adverse employment actions including his suspension, the reduction in his hours, the creation of a hostile work environment, the Club's failure to timely pay his child support payments, and his ultimate termination.

79.    Plaintiff's suspension and termination were causally related to his expressed concerns to the Club's General Manager about Lala's mistreatment of Latino employees and favoritism toward non-Latino employees.

80.    Plaintiff's suspension and termination were also based on the characteristic that placed him in a protected class.

81.    The Defendant Club has unlawfully discriminated against Plaintiff on the basis of his race in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, et seq., and particularly § 2-1402.11.

WHEREFORE, Plaintiff demands that a judgment be entered in his favor and against the Defendant Club:

- declaring that Defendant has violated DCHRA by discriminating against Plaintiff;

- ordering that Defendant reinstate Plaintiff, with all associated back pay and benefits;

- enjoining any further discriminatory conduct by Club management;

- awarding compensatory damages of at least $ 200,000, to be more fully determined at trial;

- awarding punitive damages;

- awarding Plaintiff's costs and attorneys fees; and

- granting such other relief as may be necessary and appropriate.

### COUNT TWO
(Retaliation)

82.    Plaintiff incorporates by reference the averments of Paragraphs 1-73, above, as if fully set forth herein.

83.    In complaining to Blesse about the racially discriminatory treatment of Latino employees by Lala and Lala's other harassing conduct, Plaintiff engaged in a statutorily protected activity.

84.    By publicly supporting Mr. Romero's complaint to Lizette Corro, a member of the Club's board of directors, about the discriminatory treatment of Latino employees by Lala and Blesse, Plaintiff engaged in statutorily protected activity.

85.    Plaintiff was subjected to a number of adverse employment actions including his suspension, the reduction in his hours, the creation of a hostile work environment, the Club's failure to timely pay his child support payments, and his ultimate termination.

86.    A causal connection exists between Plaintiff's statutorily protected activity and the aforementioned adverse employment actions.

87.    Plaintiff has suffered damages as a consequence of his retaliatory termination, including depression, anxiety, insomnia, and humiliation, and the loss of his only source of income.

88.    The Defendant Club unlawfully retaliated against Plaintiff for his protected activities in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, et seq., and particularly § 2-1402.61.

- 13 -

WHEREFORE, Plaintiff demands that a judgment be entered in his favor and against the Defendant Club:

- declaring that Defendant has violated the DCHRA by retaliating against Plaintiff because of his statutorily protected activity;

- ordering that Defendant reinstate the Plaintiff as a full-time waiter at the Club with all associated back pay and benefits;

- awarding compensatory damages of at least $200,000;

- awarding punitive damages;

- awarding costs and attorneys fees; and

- granting such other relief as may be necessary and appropriate.

## COUNT THREE
### (Wrongful Discharge)

89.    Plaintiff incorporates by reference the averments of Paragraphs 1-73, above, as if fully set forth herein.

90.    Although Plaintiff's employment was "at-will" in nature, his dismissal was based on race and/or retaliation, and thus falls under the public policy exception to the at-will employment doctrine.

91.    Plaintiff has suffered damages as a result of his termination, as he lost his only source of income and suffered anxiety, insomnia, depression, humiliation, and emotional distress.

WHEREFORE, Plaintiff, demands that a judgment be entered in his favor and against the Defendant Club:

- 14 -

- awarding compensatory damages of at least $ 200,000, to be more fully determined at trial;

- awarding punitive damages;

- reinstating Plaintiff as a full-time waiter at the Club;

- awarding costs and attorneys fees; and

- granting such other relief as may be necessary and appropriate.

## COUNT FOUR
### (COBRA Violations)

92.    Plaintiff incorporates by reference the averments of Paragraphs 1-73, above, as if fully set forth herein.

93.    Title 29, U.S.C. § 1162(3) limits the amount the Club can charge Plaintiff, a former employee, for continuation health insurance premiums to 102 percent of the applicable premium.

94.    Title 29, U.S.C. § 1162(3) provides that in no event may the Club require the payment of any premium before the day which is 45 days after the day on which Plaintiff, the qualified beneficiary, made the initial election for continuation coverage.

95.    The Club violated § 1162(3) by requiring that Plaintiff pay more than 102 percent of the applicable premium for continuation health care benefits coverage.

96.    The Club violated § 1162(3) by requiring that Plaintiff pay the continuation health care insurance premium in less than 45 days after the day on which Plaintiff could have made the initial election for continuation coverage.

WHEREFORE, Plaintiff, demands that a judgment be entered in his favor and against the Defendant Club:

- declaring that the Club has violated 29 U.S.C. §1162;

- ordering that Plaintiff's medical insurance be reinstated retroactively to the date of his termination;

- awarding compensatory damages to be determined at trial;

- awarding Plaintiff his costs and attorneys fees; and

- granting such other relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiff requests trial by jury as to all issues in this Complaint.

THOMPSON HINE LLP

By: _____

Christopher "Kip" Schwartz (D.C. Bar No. 444650)
1920 N Street, N.W., Suite 800
Washington, DC 20036
202.263.4157

Counsel for Plaintiff

- 17 -

Exhibit C

# Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005-3364
202.408.6400
202.408.6399 fax
www.sonnenschein.com

**Amy L. Bess**
202.408.6444
abess@sonnenschein.com

December 8, 2006

<u>VIA CERTIFIED MAIL</u>

Kip Schwartz, Esq.
Thompson Hine LLP
1920 N Street, NW
Washington, DC 20036-1600

> Re:   *Gilberto Salamanca v. The George Town Club*
>       C.A. No. 0008375-06

Dear Mr. Schwartz:

In your capacity as counsel to Mr. Salamanca, please be advised that The George Town Club intends to assert its rights in connection with its agreement with Mr. Salamanca to arbitrate his claims in the above-referenced action which arise out of his prior employment relationship with the Club. The Club will pursue arbitration in the American Arbitration Association, under its rules governing employment disputes. Pursuant to the arbitration agreement between the Club and Mr. Salamanca, please contact me at your earliest convenience to discuss the parties' joint selection of arbitrators.

Very truly yours,

*Amy L. Bess*

Amy L. Bess

Enclosure

25191191\V-1

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE GEORGE TOWN CLUB AT SUTER'S TAVERN, | |
| Petitioner, | |
| v. | Case No. |
| GILBERTO SALAMANCA, | |
| Respondent. | |

**NOTICE OF FILING PETITION TO COMPEL ARBITRATION**

**TO:**

Gilberto Salamanca
c/o Christopher "Kip" Schwartz, Esq.
Eric Heyer, Esq.
Thompson Hine LLP
1920 N Street, NW Suite 800
Washington, DC 20036

Please take notice that pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 (West 2006), Petitioner, The George Town Club at Suter's Tavern, filed the attached petition to Compel Arbitration in the United States District Court for the District of Columbia located at 333 Constitution Avenue, Washington, D.C. 20001 on December 22, 2006.

Petitioner provides Respondent with the Notice of proceedings along with a copy of the Petition by personal delivery. Please note that any responses and subsequent filings must be done through this Court.

Respectfully submitted,

December 22, 2006

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____

    Amy L. Bess (D.C. Bar No. 418985)
    1301 K Street, N.W.
    Washington, D. C. 20005
    (202) 408-6400
    (202) 408-6399 (facsimile)
    abess@sonnenschein.com

*Attorney for The George Town Club at Suter's Tavern*

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| The George Town Club at Suter's Tavern, Inc., | Gilberto Salamanca |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF <u>Dist. of Columbia</u><br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Amy L. Bess<br>Sonnenschein, Nath & Rosenthal LLP<br>1301 K Street, NW Suite 600<br>Washington, DC 20005<br>(202) 408-6400 | Christopher "Kip" Schwartz<br>Thompson Hine LLP<br>1920 N Street, NW Suite 800<br>Washington, DC 20036<br>(202) 263-4157 |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ◉ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ◉ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E.** *General Civil (Other)*          **OR**          ○ **F.** *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Federal Arbitration Act, 9 U.S.C. sec. 4. To compel arbitration because the defendant has refused to arbitrate under a written arbitration agreement.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  **DEMAND $** $600,000  Check YES only if demanded in complaint
**JURY DEMAND:**  YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  December 22, 2006  SIGNATURE OF ATTORNEY OF RECORD  *Amy L. Bess*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.