**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE GEORGE TOWN CLUB AT SUTER'S TAVERN**, Petitioner, | ) |
| v. | ) Civil Action No.: 1:06cv02181 (EGS) |
| **GILBERTO SALAMANCA**, Respondent. | ) |

# PETITIONER'S MEMORANDUM IN SUPPORT OF ITS PETITION TO COMPEL ARBITRATION

**SONNENSCHEIN NATH & ROSENTHAL LLP**
Amy L. Bess (D.C. Bar No. 418985)
abess@sonnenschein.com
Erin M. Shoudt (D.C. Bar No. 489515)
eshoudt@sonnenschein.com
1301 K Street, N.W.
Suite 600, East Tower
Washington, D. C. 20005
(202) 408-6400 (telephone)
(202) 408-6399 (facsimile)

*Attorneys for Petitioner,*
*The George Town Club at Suter's Tavern*

February 2, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

III. ARGUMENT .......... 3

A. The Arbitration Agreement is Valid and Enforceable. .......... 4

1. The Parties Agreed to Arbitrate their Disputes. .......... 4

2. There is No Basis to Invalidate the Arbitration Agreement .......... 8

B. The Arbitration Agreement Encompasses the Plaintiff's Claims. .......... 10

IV. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## CASES

*AT&T Technologies v. Communications Workers*, 475 U.S. 643 (1986) .......................... 10

*Bailey v. Federal Nat'l Mortgage Ass'n*, 209 F.3d 740 (D.C. Cir. 2000) ........................... 7

*Benefits Comm. Corp. v. Klieforth*, 642 A.2d 1299 (D.C. App. 1994) ............................... 3

*Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94 (D.D.C. 2004), *aff'd* 413 F.3d 77 (D.C. Cir. 2005) ........................................................................... 9, 10

*Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77 (D.C. Cir. 2005) ................................ 3, 8, 9

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ..................................................... 9

*Cole v. Burns Int'l Security Srvcs.*, 105 F.3d 1465 (D.C. Cir. 1997) .............................. 3, 8

*Davis v. Winfield*, 664 A.2d 836 (D.C. App. 1995) ....................................................... 5, 6

*Dowley v. Dewey Ballantine, LLP*, 2006 WL. 1102768 .............................................. 8, 11

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ........................................ 4

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ...................................... 3, 8

*Greene v. Rumsfeld*, 266 F. Supp. 2d 125 (D.D.C. 2003) ............................................. 5, 6

*Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89 (D.D.C. 2005) ................................................. 4

*Jack Baker, Inc. v. Office Space Development Corp.*, 664 A.2d 1236 (D.C. App. 1995) ........................................................................................................... 4

*Jung v. Assoc. of Am. Medical Colleges*, 300 F. Supp. 2d 119 (D.D.C. 2004) ................. 11

*M.R.S. Enters. v. Sheet Metal Workers' Int'l Assoc., Local 40*, 429 F. Supp. 2d 72 (D.D.C. 2006) ............................................................................................. 5, 6

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1 (1983) .............................................................................................................. 3

*Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143 (D.D.C. 2002) .................................... 4

*Nur v. KFC USA, Inc.*, 142 F. Supp. 2d 48 (D.D.C. 2001) .................................... 4, 10, 11

*O&Y Landmark Assoc. v. Nordheimer*, 725 F. Supp. 578 (D.D.C. 1989) .......................... 4

*Pearsall v. Alexander*, 572 A.2d 113 (D.C. App. 1990) ................................................5, 6

*Phox v. Allied Capital Advisors, Inc.*, 1997 WL. 198115 .................................................7

*Sapiro v. Verisign*, 310 F. Supp. 2d 208 (D.D.C. 2004) ...............................................7, 11

*Stromberg Sheet Metal Workers, Inc. v. Washington Gas Energy Sys., Inc.*, 448 F. Supp. 2d 64 (D.D.C. 2006) ..........................................................................3, 4

*Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002)....................................5

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ..................................................1, 2, 3

29 U.S.C. § 1162(3) ..........................................................................1, 2, 11

**PETITIONER'S MEMORANDUM IN SUPPORT**
**OF ITS PETITION TO COMPEL ARBITRATION**

## I. INTRODUCTION

Pursuant to the Court's Order dated January 18, 2007, Petitioner, The George Town Club at Suter's Tavern (the "Club"), hereby submits its Memorandum in Support of its Petition to Compel Arbitration.

As demonstrated below, the Club and Respondent, Gilberto Salamanca ("Respondent") entered into a written agreement to arbitrate "any controversy arising from or related to employment with the Club." By filing a Complaint against the Club in the Superior Court for the District of Columbia for wrongful discharge, retaliation, racial discrimination and violations of 29 U.S.C. § 1162(3) (COBRA), Respondent has refused and failed to arbitrate his claims, in violation of his agreement with the Club. Therefore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, the Club petitions this Court for an Order directing Respondent to proceed with arbitration in the manner provided in the parties' agreement.

## II. BACKGROUND

In 1997, Respondent became employed by the Club as a part-time parking valet, and thereafter, he was promoted to a full-time waiter position. Petition to Compel Arbitration[1] (hereinafter, "Pet.") at ¶ 8. At the time he commenced his employment, Respondent was issued an employee manual (the "Manual"). Id. The Respondent admits that he received the Manual when he began his employment with the Club. See Salamanca Decl. at ¶ 3; Pet. ¶ 10 and Ex. B

---

[1] For ease of reference, the Club's Petition to Compel Arbitration and the Exhibits thereto shall be referred to as "Pet." and "Ex. ___". Respondent's Declaration, attached as Exhibit 1 to his Answer and Opposition, shall be referred to herein as "Salamanca Decl. at ¶ ___."

at ¶¶ 7, 10. The Manual contained a provision entitled "Binding Arbitration" that provided, *inter alia*:

> Any controversy arising from this Manual or arising from or related to employment with the Club shall be resolved by arbitration in Washington, D.C. The agreement to arbitrate includes controversies based upon federal and DC equal employment opportunity laws, as well as other kinds of disputes. The Club will pay for the arbitrator or arbitrators, but will not pay the legal fees of employees. . . . .
>
> The arbitration shall be resolved by an arbitrator agreed upon by the parties, or by a board of three arbitrators appointed in the following manner. Each party shall appoint one arbitrator and those two shall select a third neutral arbitrator. The responding party shall advise the initiating party of the name of its arbitrator within 10 days of receipt of the Demand. If the party-appointed arbitrators cannot agree on a neutral third arbitrator, or if for any other reason, the appointment of the third arbitrator cannot be made within thirty days of the date of the Demand, *the third arbitrator may be selected by the United States District Court for the District of Columbia under the authority of the Federal Arbitration Act.*

Pet. ¶ 8 and Ex. A (emphasis added). The arbitration agreement contained no expiration date. Id. Respondent admits that in 2000, he received a new Manual from the Club containing an identical arbitration provision. Salamanca Decl. at ¶ 5; Pet. Ex. B at ¶ 11.

On November 17, 2006, Respondent filed a Complaint and Jury Demand in the Superior Court for the District of Columbia against the Club, alleging that his employment with the Club had been wrongfully terminated, and asserting claims for race discrimination, retaliation, wrongful discharge in violation of public policy, and violations of 29 U.S.C. § 1162(3) (COBRA) (the "Complaint"). Pet. at ¶ 9 and Ex. B. In his Complaint, Respondent cited multiple provisions of the Manual and relied on those provisions to support his claims. See e.g., Pet. Ex. B ¶¶ 12-15. For example, he cited the Club's procedure for "disciplinary actions" to support his claims for wrongful discharge and retaliation. Id. at ¶¶ 64, 73.

On December 8, 2006, counsel for the Club demanded that Respondent agree to arbitrate his claims asserted in the Complaint by sending a certified letter (pursuant to the requirements of the parties' arbitration agreement) to counsel for Respondent. Pet. at ¶ 14 and Ex. C. To date, Respondent has not withdrawn his Complaint from the D.C. Superior Court and has refused to abide by his agreement to arbitrate his claims arising out of his employment relationship with the Club. Pet. at ¶ 15.

## III. ARGUMENT

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, creates a strong presumption in favor of enforcing arbitration agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 US. 1, 24-25 (1983); Stromberg Sheet Metal Workers, Inc. v. Washington Gas Energy Sys., Inc., 448 F. Supp. 2d 64, 68 (D.D.C. 2006). The Supreme Court, the Court of Appeals for the D.C. Circuit and D.C. local courts have uniformly held that statutory and employment discrimination claims can properly be the subject of arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (arbitration of statutory claims does not forgo one's "substantive rights afforded by statute; it only submits to their resolution in an arbitral, rather than a judicial forum"); Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 79 (D.C. Cir. 2005); Cole v. Burns Int'l Security Srvcs., 105 F.3d 1465, 1481 (D.C. Cir. 1997) (holding that employee can be required to arbitrate statutory claims as a condition of employment if certain procedural safeguards are met); Benefits Comm. Corp. v. Klieforth, 642 A.2d 1299, 1304 (D.C. App. 1994).

Pursuant to Section 4 of the Federal Arbitration Act, the federal district court has the authority to issue an order directing the parties to arbitrate. As Section 4 provides:

> *A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court* which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, *for an order directing that such arbitration proceed in the manner provided for in such agreement*.

9 U.S.C. § 4 (emphasis added); Hughes v. CACI, Inc., 384 F. Supp. 2d 89, 93 (D.D.C. 2005); O&Y Landmark Assoc. v. Nordheimer, 725 F. Supp. 578, 582 (D.D.C. 1989).

When deciding whether to compel arbitration, the court engages in a two-part inquiry. Stromberg Sheet Metal Workers, Inc., 448 F. Supp. 2d at 68. First, the court examines whether the parties entered into a valid and enforceable agreement to arbitrate. Id. Once it is determined that a valid agreement exists, the second step is to examine whether the arbitration agreement encompasses the Plaintiff's claims in the Complaint. Id.; see also Nelson v. Insignia/ESG, Inc., 215 F. Supp. 2d 143, 149-50 (D.D.C. 2002); Nur v. KFC USA, Inc., 142 F. Supp. 2d 48, 50 (D.D.C. 2001).

Here, the parties clearly entered into an agreement to arbitrate which encompasses Respondent's employment-related claims. Thus, the Court must direct Respondent to arbitrate his disputes with the Club.

### A. The Arbitration Agreement is Valid and Enforceable.

#### 1. The Parties Agreed to Arbitrate their Disputes.

In analyzing the first step of deciding to compel arbitration -- whether the parties agreed to arbitrate -- the courts "generally should apply ordinary state law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Hughes v. CACI, Inc., 384 F. Supp. 2d 89, 97 (D.D.C. 2005).

In the District of Columbia, an enforceable contract exists when there is agreement as to all the material terms and an intention of the parties to be bound. Jack Baker, Inc. v. Office

Space Development Corp., 664 A.2d 1236, 1238 (D.C. App. 1995). It is well-recognized that intent to form a contract can be based on the conduct of the parties -- a signature is not required. Davis v. Winfield, 664 A.2d 836, 838 (D.C. App. 1995); M.R.S. Enters. v. Sheet Metal Workers' Int'l Assoc., Local 40, 429 F. Supp. 2d 72, 79 (D.D.C. 2006) ("if a company's conduct demonstrates that it accepts a labor agreement, then it is immaterial whether the agreement was signed"). As the Court of Appeals for the District of Columbia has stated:

> Mutual assent to a contract, often referred to as a 'meeting of the minds' is most clearly evidenced by the terms of a written agreement, *but such a signed writing is not essential to the formation of a contract*. The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds: '*the intentions of the parties to a contract must be determined not only from the terms of the written agreement but also from the actions of the parties in relation thereto.*'

Davis, 664 A.2d at 838 (emphasis added) (quoting Bergman v. Parker, 216 A.2d 581, 583 (D.C. 1966)); Pearsall v. Alexander, 572 A.2d 113, 117 (D.C. App. 1990); see also Sturdza v. United Arab Emirates, 281 F.3d 1287, 1301 (D.C. Cir. 2002) ("The D.C. Court of Appeals, however, has squarely held that although '[m]utual assent to a contract …is most clearly evidenced by the terms of a signed written agreement, … (such a signed writing is not essential to the formation of a contract.'"); see also Greene v. Rumsfeld, 266 F. Supp. 2d 125, 136 (D.D.C. 2003). In short, "the purpose of a signature is simply to demonstrate mutual assent to a contract, but that may be shown instead, or in addition, by the conduct of the parties." Davis, 664 A.2d at 838.

In Davis, an intent to be bound based on conduct was found when the plaintiffs tendered lease payments and signed the lease while the landlord, without signing the lease agreement, accepted the lease payments, took the house off the market and prepared to give the keys to the plaintiff. 664 A.2d at 838. The D.C. Court of Appeals held that because the parties had

evidenced their intent through conduct, the lower court erred by not admitting the lease into evidence simply because it was not signed by both parties. Id.

In Greene, the parties evidenced their intent to be bound by a settlement agreement through conduct because they had stated that they were relieved to reach an agreement and contacted the magistrate to inform him that a settlement was reached. 266 F. Supp. 2d at 137. Likewise, in Pearsall, the court held that the parties entered into an enforceable agreement to share the proceeds of a winning lottery ticket because one of the parties gave verbal assent to be "in on" the deal to share the ticket, and then scratched the ticket, while the other party handed the tickets over. 572 A.2d at 117. The acts of giving the ticket and scratching it provided the "meeting of the minds" required to make an enforceable agreement. Id. Finally, in M.R.S., the court determined that a contractor was bound by a collective bargaining agreement because it had remitted dues and made payments into the union's benefit funds. In addition, the contractor further relied on the termination provisions of the agreement in notifying the union of its decision to terminate the agreement. 429 F. Supp. 2d at 78-9.

Here, the conduct of the parties evidences the parties' intent to be bound by the arbitration agreement in the Manual. As he admits, when he first began employment with the Club, the Respondent was given a copy of the Manual setting forth the requirement that he arbitrate any dispute he might later have with the Club. Pet. at ¶ 10 and Ex. B at ¶ 11; Salamanca Decl. at ¶ 3. Respondent evidenced his intent to be bound by this requirement by beginning work with the Club. Indeed, the Respondent accepted and took advantage of all of the benefits of the employment relationship offered by the Club, including compensation, merit increases and various other benefits, such as paid vacation and paid health insurance benefits. At no time did he contest the applicability of the arbitration requirement to him.

Respondent thus understood and agreed that any disputes that he might have relating to his employment with the Club would have to be submitted to binding arbitration. Respondent never refused to be bound by the arbitration provision. Nor does he allege that he was unaware of the arbitration requirement -- indeed, he fully admits his awareness of the Manual's other provisions by citing them extensively in his Superior Court Complaint. Pet., Ex. B at ¶¶ 12-14. In addition, he did not voice any objection when the policy was issued again in 2000, with identical language, in the Club's revised Employee Manual. Salamanca Decl. at ¶ 5. The Respondent simply wants to hold the Club to the provisions of the Manual, but claim no corresponding obligation to abide by its requirements, to which he has consented by his conduct.[2] As in M.R.S., Respondent cannot rely on certain provisions of the Manual to support his claims, but ignore the other provisions that he now believes are not in his interest.

Respondent and the Club also gave consideration for their promises to arbitrate. "Mutual agreements to arbitrate are independently sufficient forms of consideration." Sapiro v. Verisign, 310 F. Supp. 2d 208, 214 (D.D.C. 2004). In Sapiro, the defendant agreed to employ the plaintiff and the ability to enforce the arbitration agreement was mutual. Id. Likewise, both parties agreed to arbitrate their claims in this case. Indeed, if Respondent was the party that desired to arbitrate here, whereas the Club preferred to defend Respondent's claims in court, the Club would nevertheless be unable to avoid its duty to arbitrate. The parties' mutual obligation thus provides the necessary consideration to enforce the arbitration agreement.

[2] The Respondent will most likely argue that an arbitration clause in an employment manual is unenforceable if it is not signed. He has previously cited Bailey v. Federal Nat'l Mortgage Ass'n, 209 F.3d 740, 744-747 (D.C. Cir. 2000) and Phox v. Allied Capital Advisors, Inc., 1997 WL 198115, *1 (D.D.C.) as allegedly supporting this proposition. However, not only is this contention incorrect, the employment manual at issue in each of these cases was distributed after the plaintiffs had begun employment. In contrast, Respondent received the Manual in this case containing the arbitration clause at the time he began employment with the Club, not sometime thereafter. In addition, the arbitration agreement in Phox was permissive. Here, the parties agreed to mandatory arbitration of "any controversy" arising from the Respondent's employment with the Club. Neither the Club nor Respondent could "opt out" of their respective arbitration obligations.

**2. There is No Basis to Invalidate the Arbitration Agreement.**

Respondent bears the burden of proving that the procedures in the arbitration would prohibit him from vindicating his statutory rights. Cole v. Burns Int'l Security Srvcs., 105 F.3d 1465, 1481 (D.C. Cir. 1997); Dowley v. Dewey Ballantine, LLP, 2006 WL 1102768, at *7 (D.D.C.). However, speculation as to what *may* happen in an arbitration proceeding is not sufficient to meet this burden. Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 82 (D.C. Cir 2005); see also Gilmer, 500 U.S. at 30. There is nothing in the arbitration agreement in this case that could prohibit Respondent from vindicating his statutory rights.

In Cole, the D.C. Circuit held that for an employee, as a condition of employment, to be required to arbitrate his statutory claims, the arbitration agreement must: 1) provide for neutral arbitrators; 2) provide for more than minimal discovery; 3) require a written award; 4) provide for all types of relief that would otherwise be available in court; and 5) not require employees to pay either unreasonable costs *or* any arbitrator's fees or expenses as a condition of access to the arbitration forum. 105 F.3d at 1482.

Here, consistent with the D.C. Circuit's admonishment in Cole, the arbitration agreement provides for neutral arbitrators. Pet., Ex. A at p. 61. Indeed, the agreement provides that the parties can either (i) agree to one arbitrator or (ii) each can appoint one arbitrator and together, they can appoint a neutral third. Id. Further, the arbitration agreement provides that the Club will pay for the costs of the arbitration. Id.

Finally, the arbitration agreement here provides that the "board of arbitrators shall determine[sic] the procedures for the administration of the arbitration." Id. An arbitration agreement will not be declared invalid simply because decisions on rules and procedures are left to the arbitrator's discretion. See Booker, 413 F.3d at 82. In Booker, the D.C. Circuit refused to

invalidate an arbitration agreement despite plaintiff's allegation that the type of discovery tools were left to the arbitrator's discretion, stating:

> such speculation about what *might* happen in the arbitral forum is plainly insufficient to render the agreement unenforceable. At no point does Booker claim that the agreement prohibits the arbitrator from affording what Booker asserts is required … to invalidate the agreement on the basis of Booker's speculation would reflect the very sort of 'suspicion of arbitration' the Supreme Court has condemned as 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.'

Id. (quoting Gilmer, 500 U.S. at 30). Similarly, the arbitration agreement in the Manual which requires mutually selected arbitrators to determine the arbitration procedures, provides the necessary safeguards for Respondent to vindicate his statutory rights in arbitration.

In addition, there is no evidence of any duress, fraud or overreaching that occurred when the arbitration agreement was reached here – nor does Respondent allege any. Moreover, the arbitration agreement does not unreasonably favor one party over the other. Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94 (D.D.C. 2004), *aff'd* 413 F.3d 77 (D.C. Cir. 2005). As noted above, the burden is equal in that both parties here are required to arbitrate their claims. And, because the arbitration process is usually less costly, it advantages both parties. Both the U.S. Supreme Court and the D.C. Circuit have recognized this special advantage that arbitration affords:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment contract…arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which involves smaller sums of money than disputes concerning commercial contracts.

Id.; (quoting Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001)). Moreover, because the Club is mandated to pay the costs of the arbitration (including the costs of all of the

arbitrators), the Respondent receives a significant benefit with an arbitration forum while the Club actually bears an inordinate burden. Pet., Ex. A.

In addition, Respondent cannot argue that he lacked a meaningful choice in agreeing to arbitrate. The arbitration agreement was included with all of the other policies that Respondent agreed to abide by, and has relied on, to support his claims. Moreover, the arbitration agreement appeared in a full page of the Manual; it was not hidden in fine print or difficult to find. See Nur, 142 F. Supp. 2d at 51 (finding that arbitration agreement in employment agreement was not in fine print and did not represent a contract of adhesion); Booker, 315 F. Supp. 2d at 102, *aff'd* 413 F.3d 77, 79 (D.C. Cir. 2005) (finding that employee had a fair opportunity to understand the terms of the arbitration agreement because they were not "hidden in a maze of fine print."). In any event, "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable." Booker, 315 F. Supp. 2d 94 (D.D.C. 2004), *aff'd* 413 F.3d 77, 79 (D.C. Cir. 2005).

Accordingly, there are no "fairness" issues that would prevent Respondent from being compelled to arbitrate his claims.

**B. The Arbitration Agreement Encompasses the Plaintiff's Claims.**

In the second step of the Court's analysis, the Court must determine that the arbitration agreement encompasses the Respondent's claims. Nur, 142 F. Supp. 2d at 51. The Supreme Court has mandated that arbitration clauses be broadly construed:

> Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of arbitration. Id.

AT&T Technologies v. Communications Workers, 475 U.S. 643, 650 (1986); Dowley v. Dewey Ballantine, LLP, 2006 WL 1102768, at *7 (D.D.C.). The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. Sapiro, 310 F. Supp. 2d at 212. Here, there is no doubt that the arbitration agreement covers Respondent's claims.

The arbitration agreement in the Manual states that:

> *Any controversy arising from this Manual or arising from or related to employment with the Club* shall be resolved by arbitration in Washington, D.C. The agreement to arbitrate includes controversies based upon federal and DC equal employment opportunity laws, as well as other kinds of disputes.

Pet. at ¶ 8 and Ex. A (emphasis added). The Respondent has alleged employment-based claims of race discrimination, retaliation, wrongful discharge in violation of public policy, and violations of 29 U.S.C. § 1162(3) (COBRA). Pet. at ¶ 9 and Ex. B. These claims clearly fall within the scope of the arbitration agreement's language requiring the parties to arbitrate "any controversy arising from this Manual or arising from or related to employment with the Club." See Nur, 142 F. Supp. 2d at 51 (examining similar language and finding the arbitration agreement covered claims of wrongful discharge, defamation and pursuant to the D.C. Human Rights Act). Moreover, "courts have interpreted broadly agreements providing for the arbitration of disputes 'arising out of or relating to' the underlying contract." Jung v. Assoc. of Am. Medical Colleges, 300 F. Supp. 2d 119, 146 (D.D.C. 2004). Respondent's employment claims against the Club are clearly encompassed by the Manual's arbitration agreement.

## IV.  CONCLUSION

For the foregoing reasons, the Petitioner's Petition to Compel Arbitration should be granted and Respondent's claims against Petitioner referred to arbitration.

February 2, 2007                                    Respectfully submitted,

**SONNENSCHEIN NATH & ROSENTHAL LLP**

By: /s/ Amy L. Bess
Amy L. Bess (D.C. Bar No. 418985)
abess@sonnenschein.com
Erin M. Shoudt (D.C. Bar No. 489515)
eshoudt@sonnenschein.com
1301 K Street, N.W.
Suite 600, East Tower
Washington, D. C. 20005
(202) 408-6400 (telephone)
(202) 408-6399 (facsimile)

*Attorneys for Petitioner, The George Town Club at Suter's Tavern*

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 2nd day of February, 2007, I caused a copy of the foregoing Petitioner's Memorandum in Support of its Petition to Compel Arbitration to be filed with the Court and served upon the following via the Court's electronic case filing system:

Christopher "Kip" Schwartz, Esq.
Eric Heyer, Esq.
C. Dennis Southard, IV Esq.
THOMPSON HINE LLP
1920 N Street, NW Suite 800
Washington, DC 20036
(202) 263-4157

/s/ Amy L. Bess