UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE GEORGE TOWN CLUB AT SUTER'S TAVERN, | ) ) ) ) | |
| Petitioner, | ) ) | Civil Action No. 06-2181 (EGS) |
| v. | ) ) ) | |
| GILBERTO SALAMANCA, | ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM OPINION**

Respondent Gilberto Salamanca brought an action in the Superior Court for the District of Columbia against his former employer, the George Town Club at Suter's Tavern ("the Club"), alleging wrongful termination of employment based on race discrimination and retaliation, and health insurance law violations under 29 U.S.C. § 1162(3) ("COBRA"). The Club subsequently filed in this Court a Petition to Compel Arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, which seeks enforcement of an arbitration agreement between respondent and petitioner and is currently pending. Upon consideration of the petition, the response and reply thereto, the arguments made at the hearing on March 9, 2007, the applicable law, and the entire record, the Court determines that petitioner is unable to demonstrate the existence of a binding

1

arbitration agreement between the two parties.  Therefore, for the reasons stated herein, petitioner's petition to compel arbitration is **DENIED**.

## BACKGROUND[1]

Petitioner is a non-profit private dining club in the District of Columbia.  In 1997, petitioner hired respondent as a part-time parking valet.  At or about the time respondent was hired, he received a copy of the petitioner's Employee Manual.  This manual contained a "Binding Arbitration" provision, which set forth an arbitration policy: "Any controversy arising from this Manual or related to employment with the Club shall be resolved in arbitration in Washington, D.C.  The agreement to arbitrate includes controversies based upon federal and DC equal employment opportunity laws, as well as other kinds of disputes."

Upon receiving the Employee Manual with the aforementioned arbitration provision, respondent was neither asked to sign nor did he sign petitioner's standard "Acknowledgment of Employee Manual" form.  The "Acknowledgment of Employee Manual" form reads in full:

> I have received and read (or had read to me)
> the Historic George Town Club Employee Manual
> and agree to abide by and observe the
> policies and procedures described therein.  I

---

[1] Unless otherwise noted, these facts are drawn from respondent's Memorandum in Opposition to Petitioner's Memorandum in Support of its Petition to Compel Arbitration and were not disputed by petitioner.

>understand that this manual supercedes all previous manuals.
>
>I understand that nothing in the Manual may be construed to be an expressed or implied contract of employment, but rather an overview of working policies and benefits, that the policies and benefits may change from time-to-time as business necessitates.
>
>I further agree that any controversy arising out of, or related to, my employment with the Club, including but not limited to controversy concerning equal employment opportunity rights created by federal law and by the law of the District of Columbia, shall be resolved by arbitration, pursuant to the Federal Arbitration Act, and that the method of selecting arbitrators is that set forth in the Manual.  I also consent to the jurisdiction of the United States District Court for the District of Columbia for all purposes in connection with arbitration.
>
>I understand that it is a condition of my employment that I read (or have read to me) this manual.

In 1998, respondent was promoted to a full-time waiter position.  Two years later, in 2000, the petitioner's Employee Manual was replaced by a new manual, which contained the same arbitration policy language as the previous edition.  Upon receipt of the new manual, respondent was neither asked to sign nor signed petitioner's "Acknowledgment of Employee Manual" form. Nevertheless, respondent remained a full-time waiter at the Club until his discharge in September 2006.

On November 17, 2006, respondent filed a complaint in the Superior Court for the District of Columbia against the

3

petitioner, alleging wrongful termination of employment based on race discrimination and retaliation under the D.C. Human Rights Act and health insurance law violations under COBRA. Respondent's complaint cited multiple provisions of the petitioner's Employee Manual to support his claims on how the petitioner failed to follow its own policies in relation to its treatment and termination of respondent, but the complaint neither alleges that the Employee Manual is a contract nor does it assert any claims for breach of the Employee Manual.

On December 8, 2006, petitioner's counsel, by letter to respondent's counsel, demanded that respondent agree to arbitrate his claims. In response, on December 12, 2006, respondent's counsel requested in a letter that the petitioner clarify its position on whether its demands for arbitration rested upon the arbitration policy within the Employee Manual. That same day, petitioner's counsel responded by letter that the demands for arbitration were not premised upon the arbitration policy within the Employee Manual, but rather upon the separate arbitration agreements set forth in the "Acknowledgment of Employee Manual" forms, which were included with the response.

On December 13, 2006, respondent's counsel received the "Acknowledgment of Employee Manual" forms, but none of them were for respondent. In addition to respondent, two former Club employees, Melaku Teferra and Samuel Romero, brought similar

4

discrimination suits against the petitioner.  Respondent's counsel represents Teferra and Romero, as well as another Club employee, Iginio Ballarin.  Petitioner sent respondent's counsel "Acknowledgment of Employee Manual" forms for Teferra, Romero, and Ballarin, but failed to produce a form for respondent.

The Club filed a Petition to Compel Arbitration in this Court on December 22, 2006, seeking an order directing the parties to arbitrate respondent's Superior Court claims.  The petition is based on the arbitration clause in the Employee Manual.  Respondent refuses to withdraw his complaint in Superior Court, arguing that he has no contractual obligation to arbitrate since the arbitration policy set forth in the Employee Manual does not constitute an agreement to arbitrate under the FAA.

**ANALYSIS**

**I. Standards for Petitions to Compel Arbitration**

The instant petition is before the Court pursuant to Section 4 of the FAA, which allows a party that is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration . . . [to] petition any United States district court . . . for an order directing that arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Under the FAA, there is a strong presumption in favor of enforcing arbitration agreements.  *Stromberg Sheet Metal Workers, Inc. v. Washington Gas Energy*

*Sys., Inc.*, 448 F. Supp. 2d 64, 67 (D.D.C. 2006). Despite the presumption in favor or arbitration, however, "parties cannot be forced into arbitration unless they have agreed to do so." *Id.* Because arbitration provisions are a matter of contract between the parties, it is for the Court to decide whether the parties are bound by a given arbitration clause. *Id.*

Therefore, in evaluating a petition to compel arbitration, a court must apply a two-part inquiry: (1) determine whether the parties entered into a valid and enforceable arbitration agreement, and if so, then (2) determine whether the arbitration agreement encompasses the claims raised in the complaint. *Id.* at 68. If the party opposing arbitration contends that no agreement to arbitrate was entered, the Court decides the issue using the standards for resolving a summary judgment motion pursuant to Federal Rule of Civil Procedure 56. *Id.*

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The

non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

## II. Existence of Valid and Enforceable Arbitration Agreement

In determining whether an arbitration agreement is a valid contract, a court must "apply ordinary state law principles that govern the formation of contracts." *Hughes v. CACI, Inc.-Commercial*, 384 F. Supp. 2d 89, 95 (D.D.C. 2002).  As such, a court must be able to conclude that the parties to the contract explicitly agreed to arbitrate the dispute at issue. *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 80 (D.D.C. 2003).

Under District of Columbia law, "an enforceable contract does not exist unless there has been a 'meeting of the minds' as to all material terms." *Bailey v. Fed. Nat'l Mortgage Assoc.*, 209 F.3d 740, 746 (D.C. Cir. 2000).  "[A] contract is not formed unless the parties reach an accord on all material terms and indicate an intention to be bound," and such an intention must be "closely examined." *Id.*  In addition, courts "should not assume that parties agreed to arbitrate unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Finally, the

party asserting the existence of a contract has the burden of proving its existence. *Bailey*, 209 F.3d at 746.

It is undisputed that respondent did not sign an agreement to arbitrate. Petitioner argues that, regardless of the lack of a signature, there was mutual assent to an arbitration agreement between itself and respondent and that the assent is established by the conduct of the parties. Specifically, petitioner contends that respondent demonstrated his intent to be bound to the Employee Manual's arbitration clause by continuing employment after receiving the manual.

In general, "although 'mutual assent to a contract is most clearly evidenced by the terms of a signed written agreement, such a signed writing is not essential to the formation of a contract.'" *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1301 (D.C. Cir. 2002) (quoting *Davis v. Winfield*, 664 A.2d 836, 837 (D.C. 1995)). Contrary to petitioner's specific argument, however, the D.C. Circuit held in *Bailey* that continued employment is *not* an indication to be bound by an arbitration policy. 209 F.3d at 746-47. In that case, the court supported the proposition that "the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a 'knowing agreement' on the part of an employee." *Id.* (quoting *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997)). Therefore, respondent's continued

employment alone is insufficient to demonstrate his assent to the Employee Manual's arbitration clause.  The cases relied upon by petitioner are not to the contrary because they involve parties who clearly manifested intent by committing acts specifically mandated by contracts or employees who actually signed arbitration agreements.  *See Davis*, 664 A.2d at 838 (upholding contract where party affirmatively acted according to specific terms of unsigned contract); *M.R.S. Enters., Inc. v. Sheet Metal Workers' Int'l Assoc., Local 40*, 429 F. Supp. 2d 72, 78 (D.D.C. 2006) (same); *Sapiro v. Verisign*, 310 F. Supp. 2d 208, 214 (D.D.C. 2004) (enforcing signed arbitration agreement).

In addition to the lack of evidence of respondent's assent to the Employee Manual's arbitration clause, there is evidence that petitioner itself did not intend for the manual alone to be a binding contract.  *See Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 504 (D.C. 2002) (holding that "employers can effectively disclaim any implied contractual obligation arising from" an employee manual).  As indicated in the record and again affirmed before the Court, some of petitioner's employees signed a separate "Acknowledgment of Employee Manual" form, which stated that "nothing in the Manual may be construed to be an expressed or implied contract of employment, but [is] rather an overview of working policies and benefits, [and] that the policies and benefits may change from time-to-time as business necessitates."

9

In addition, this form included separate language stating that "any controversy arising out of, or related to . . . employment with the Club . . . shall be resolved by arbitration, pursuant to the Federal Arbitration Act." The use of this form clearly demonstrates that petitioner intended that the "Acknowledgment of Employee Manual" form, rather than the Employee Manual, create an arbitration agreement between employer and employee. As there is no such form for respondent, the Court concludes that petitioner has failed to meet its burden to show that there was mutual assent of both parties to an arbitration agreement.[2]

## CONCLUSION

Because petitioner has failed to satisfy its burden of proving that the parties entered into a binding arbitration agreement, petitioner's petition to compel arbitration is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**Signed:   Emmet G. Sullivan**
**          United States District Judge**
**          April 5, 2007**

---

[2] Given the petitioner's inability to provide sufficient evidence of an arbitration agreement between both parties, the Court need not consider whether respondent's arbitration claims are encompassed within the Employee Manual's arbitration clause. *See Stromberg*, 448 F. Supp. 2d at 68.